IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:12-CV-2316

MS PACIFIC CO., LTD.

       Plaintiff,

SPORTEX, INC.

       Defendant

SPORTEX, INC.

       Counterclaim Plaintiff,

MS PACIFIC CO., LTD.

       Counterclaim Defendant.

---

**DEFENDANT'S SETTLEMENT STATEMENT TO PLAINTIFF**

---

### 1. OVERVIEW

Plaintiff's claims damages arising from Plaintiff's sale and delivery to Defendant of various goods, including jackets and fleece products as more specifically set forth on Plaintiff's Sales Contracts (the "Goods"), and Defendant's failure to pay for such Goods.

Defendant admits it received Goods but that the Goods were not of the same nature and quality as the specific samples of goods Defendant gave Plaintiff to duplicate ("Third Party Products"). Defendant claims damages for Plaintiff's inferior, defective and/or non-conforming Goods and that it is not liable to pay Plaintiff for the defective Goods.

In May 2010 and June 2010, Plaintiff and Defendant entered into three sales contracts (the "Contracts") for the purchase and sale of various types of fleece jackets, fleece blankets, and other jackets including waterproof windshirts and windbreakers. The quantities and descriptions of the goods are set forth in the three (3) Sales Contracts. The combined value of the Contracts totals $1,835,374.60, which includes $1,124,222.10 of various fleece jackets and blankets ("Fleece") and $711,152.50 of various waterproof windshirts and windbreakers ("Wind Products"). Plaintiff shipped the Goods, and Defendant received all of the Goods in September 2010 and November 2010.

The Fleece and Wind Products and other Goods did not conform to the Third-Party Products agreed to be duplicated and were in fact non-conforming and defective in numerous respects. The Defendant will present a representative sampling of the Goods from the 365,000 + pieces it received in approximately 35 40' containers and packaged in 1000's of boxes. The Goods were all made from the same fabrics and all have the same characteristics. The sampling will show the patent non-conforming and defective characteristics of the Goods.

Defendant has received approximately $1,000,000 from its customers from the sale of a portion of the Goods, and currently possesses the remaining inventory. Defendant is using the proceeds from the sale of the defective Goods to cover its damages.

2

## 2.  EVIDENCE

The non-expert witnesses are: Mr. MyungSup Kim, President of Plaintiff, Johnny Lee, President of Defendant, Clyde Lay and Mr. David Threlfall. The witnesses for Defendant will testify at trial that the Goods Plaintiff manufactured and shipped to Defendant were defective and non-conforming to the Third Party Products and the other similar goods available in the marketplace and the nature and extent of the defects.

List the expert witnesses to be called by each party.  None

The Defendants Exhibits include: a representative sample of Fleece Goods; a representative sample of waterproof Windproof Goods; a representative sample of other Goods; samples of Third Party Goods (provided to Plaintiff); a September 30, 2011 email from Mr. Kim to Mr. Lee regarding $300,000 payment for all of the Goods; Defendant's duty, freight, transportation, inspection, storage, shipping and other costs and expenses incurred in connection with the receipt of the Goods; and Exhibits giving Plaintiff timely notice of the defective Goods.

The representative samples of the Goods themselves illustrate the nature and extent of the issues with the Goods, including:  fleece quality and coloring, zippers on the wrong side, sizing, waterproofing, bleeding of colors, etc.

In correspondence following receipt of the Goods in September and November 2010, Defendant provided Plaintiff with notices regarding problems with the goods received. Defendant sent emails on November 16 2010 and thereafter to Plaintiff and set forth some of the defects in the Goods.  During a meeting with Mr. Kim on

December 11, 2010 at Defendant's Denver, Colorado facility, Defendant discussed and showed the actual Goods themselves to Mr. Kim in order to document to Plaintiff their defects (e.g. fleece quality and coloring, zippers on the wrong side, sizing, waterproofing, bleeding of colors, etc.).

Plaintiff and Defendant do not dispute the President of Plaintiff visited the President of Defendant at its Denver, Colorado facility where the goods were located. Paragraph 15 of Mr. Lee's Affidavit states a purpose of the meeting was to discuss the non-conforming and defective Goods. Paragraph 15 of Mr. Lee's Affidavit also states that at the meeting Mr. Lee and Mr. Kim discussed the problems with the Goods.

It is undisputed that Plaintiff sent one of his representatives (Mr. Ahn) and repairing tools to Defendant's facility in Denver, Colorado in October and November 2010 to attempt to fix defects with the zippers on the Goods.

The Defendant disputes the receipt of Merchandise Samples in June 2010 and September 2010. The "samples" previously referred to by Plaintiff and Defendant were some Fabric Samples (swatches). Mr. Lee states Defendant reviewed some of the Goods after they were manufactured and shipped by Plaintiff and received by Defendant. Defendant did not receive the Merchandise Samples as alleged by Plaintiff. Mr. Lee clarifies he was referring to a portion of the Fabric Samples and not any unspecified portion of the alleged Merchandise Samples.

The Entry Summary states the Goods were exported from China on August 5, 2010. The manufactured goods themselves were sent to the port for loading and exportation well before August 5, 2010. Given the several months lead time for goods

to be shipped from China to the United States and then to clear customs and be delivered by truck to Defendant, it is an undisputed fact that the Merchandise Samples allegedly received by Defendant were not sent before the Goods themselves were shipped.

The Plaintiff does not refer to any portion of the Sales Contract or offer any other document or evidence that refers to Merchandise Samples, their shipment dates to Defendant, quantity, description or other details of Merchandise Samples or any duties or responsibilities that Defendant may have agreed to with respect to Merchandise Samples. Plaintiff takes the inspection process out of context. In Paragraph 10 of Mr. Lee's Affidavit he states the boxes Defendant opened were the actual Goods themselves received as a part of Defendant's orders. Mr. Lee explained during discovery and in Paragraph 11 of his Affidavit that Defendant is a wholesaler and reasonably relies on its manufacturers, including Plaintiff, to make goods according to the sample goods (i.e. Third-Party Products) provided to them. Defendant sends the goods to its sales representatives for subsequent sale to their customers.

In Paragraph 12 of Mr. Lee's Affidavit he states Defendant looks primarily to its sales representatives for feedback and other comments from their retail customers on the sample merchandise it provides them for resale. In Paragraph 13 of his Affidavit, Mr. Lee states that Plaintiff was fully aware of Defendant's wholesale business practice and the role of Defendant's sales representatives. Defendant will show a course of dealing that it is Plaintiff's custom and duty to inspect the goods before they are shipped and Defendant does not break open all of the boxes and do an itemized inspection of such a large quantity of goods upon receipt.

5

Defendant will show that: (1) Plaintiff is experienced in, knowledgeable about and capable of matching in terms of color, quality, size and other characteristics the specific Third-Party Products the Plaintiff admits it received from the Defendant; (2) a standard practice of Plaintiff and Defendant and in the garment industry in general is to provide actual samples of products to the manufacturer when you wish to have it make the same products for you; (3) Plaintiff agreed with Defendant to make and sell Defendant fleece jackets, fleece blankets, waterproof windshirts and windbreakers and other goods that were the same as the Third-Party Products in terms of color, quality, size and other characteristics as the specific Third-Party Products; (4) there was nothing extraordinary or unique about the fleece and waterproof goods Plaintiff offered to manufacture and sell to Defendant; (5) Plaintiff had no misunderstanding as to the goods he was selling to the Defendant; and (6) The goods are standard and common in the industry and available from any number of sources.

At no time, did Defendant waive any of its rights or defenses to payment. A material issue of fact exists as to: (1) whether any "agreement" to make any payments to Plaintiff was ever made; (2) the amount agreed to be paid; (3) whether any such agreement was conditioned upon the correction and/or sale of the non-conforming and defective Goods; and (4) whether Defendant is able to recoup its out of pocket expenses for duty, freight, storage, interest and other costs exceeding $1,000,000.00 prior to any payment to Plaintiff.

At one point, Mr. Kim and Mr. Lee agreed that Plaintiff would take a total of $300,000.00 as full payment for the Goods. Plaintiff received no payment and took no legal action with respect to non-payment until August 2012 when it filed a Complaint against Defendant.

6

Defendant properly exercised its UCC rights and remedies to wit: (1) UCC 4-2-313 provides Buyer with an express warranty from Seller for sales of goods by description that the goods will conform to the quality, description, etc. of the samples (i.e. Third Party Products) provided by Buyer to Seller. Buyer has no duty to inspect the goods to assert the warranty and does not waive Seller's warranty by not inspecting; (2) UCC 4-2-314 provides Buyer with an implied warranty from Seller for sales of goods that the goods will be merchantable for goods of those kind, will be fit for their ordinary purpose and will pass in the trade as goods of like quality; (3) UCC 4-2-602 provides that Buyer may reject goods and if Buyer is in possession of the goods at the time of rejection, Buyer may hold the goods; (4) UCC 4-2-606 provides if Buyer is deemed to have accepted the goods, Buyer may revoke its acceptance; (5) Both UCC Sections 602 and 606 provide Buyer with a reasonable time to inspect and discover. A reasonable time is not stated specifically and is inherently a facts and circumstances analysis based upon the facts and circumstances of each situation; and (6) UCC 4-2-711 provides Buyer with a right to "cover" its costs and expenses associated with the goods, gives Buyer has a security interest in the goods in Buyer's possession and allows Buyer to hold and sell the goods to reimburse Buyer for its costs and expenses incurred.  Defendants UCC 4-2-513 inspection notices are referred to above and attached as Exhibits.

### 3. Demand and Offer

Defendant offers to sell the remaining Goods to the Plaintiff for the balance of its damages. The Defendant's damages to be agreed to by Plaintiff and Defendant. Alternatively, Defendant will continue to attempt to sell the Goods for the best price

7

and terms available to cover its damages and then notify the Plaintiff that it may pick up the remaining Goods at Defendant's facility.

DATED this 12th day of August 2013

<u>/s/ William B. Hayes</u>

William B. Hayes
257 Jackson Street
Denver, CO 80206
303 514 0658
Attorney for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2013, I served by filing through ECF of the foregoing:

1. Defendant's Settlement Statement

To: M: Zachary Bluestone attorney for Plaintiff MS Pacific Co., Ltd. at mzb@bluestonelaw.com.


/s/ William B. Hayes